Dean KENT, Plaintiff–Appellee,

v.

**Jared KATZ, individually and as a Police Officer for the Town of Colchester, Defendant–Appellant.**

**Docket No. 01–7832.**

United States Court of Appeals, Second Circuit.

Argued: April 2, 2002.

Decided: Dec. 10, 2002.

---

Thomas C. Nuovo, Burlington, VT (Bauer, Anderson & Gravel, Burlington, VT, on the brief), for Plaintiff–Appellee.

Joseph A. Farnham, Burlington, VT (McNeil, Leddy & Sheahan, Burlington, VT, on the brief), for Defendant–Appellee.

Before: WALKER, Chief Judge, NEWMAN and KEARSE, Circuit Judges.

KEARSE, Circuit Judge.

Defendant Jared Katz, an officer in the Colchester, Vermont Police Department, challenges so much of an order of the United States District Court for the District of Vermont, William K. Sessions III, *Judge*, as denied his motion pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing the claims of plaintiff Dean Kent brought under 42 U.S.C. § 1983 and state law for false arrest, on the ground that Katz has qualified immunity from suit on those claims because a state court found probable cause for Kent's arrest, thereby collaterally estopping Kent from proving an essential element of his false arrest claims. In the district court, Katz had moved to dismiss all of Kent's claims; the district court denied the motion in part, stating that as to certain claims, including the claims of false arrest, the presence of genuine issues of material fact precluded the granting of summary judgment.

█ After Katz filed a notice of appeal, Kent moved to dismiss the appeal for lack of appellate jurisdiction. This Court granted the motion in part, noting that we have jurisdiction to entertain an interlocutory appeal from the denial of summary judgment based on an immunity defense only to the extent that the defense can be decided as a matter of law. *See, e.g., Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Johnson v. Jones*, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *In re State Police Litigation*, 88 F.3d 111, 124 (2d Cir.1996). Accordingly, we dismissed so much of the appeal as dealt with (a) Kent's claims other than those for false arrest, and (b) the false arrest claims themselves except to the extent that Katz asserted qualified immunity as a matter of law on the basis of collateral estoppel as to the issue of probable cause. For the reasons

that follow, we conclude that Kent's contention that he was arrested without probable cause is not precluded by collateral estoppel, and that Katz has not shown that he is entitled to qualified immunity as a matter of law. We therefore affirm the denial of summary judgment.

## I. BACKGROUND

Except as indicated, the following facts pertaining to the claims of false arrest are essentially undisputed. On the afternoon of June 20, 1996, Kent and two assistants, Keith Shappy and Aaron Sterling, were clearing brush and burning it on Kent's property in the Town of Colchester, Chittenden County, Vermont. At some point, Kent drove off on an errand, leaving Shappy and Sterling to tend the fire. While Kent was gone, Katz arrived, responding to a complaint of a fire on the property. Kent shortly returned, parked his Jeep, and walked toward Katz.

Katz informed Kent that there had been a complaint; Kent asked who had complained. This exchange occurred several times. Katz asked whether Kent had a permit for the fire. Kent said they had been burning brush for 18 days, and he shrugged; the parties differ as to the meaning of the shrug.

At some point, Katz stated that Kent's eyes were red, and he asked whether Kent had been drinking. Kent said he had not, but his response included the statement, "[n]ot very much." According to Kent, his first response was "no"; when he was asked how much alcohol he had drunk, he said "[n]ot very much" sarcastically; and he reiterated to Katz that he had not been drinking that day.

Katz also asserts that Kent was walking unsteadily as he approached Katz; that Kent swayed as he stood before Katz; that Kent's speech was slurred; and that there

was a strong odor of intoxicants on Kent's breath. Disputing these assertions, Kent submitted affidavits from Shappy, Sterling, and others who had been with Kent on June 20, stating that Kent had not been drinking alcohol that day. Shappy and/or Sterling, both of whom witnessed the encounter between Katz and Kent, stated that Kent had not staggered, swayed, appeared intoxicated, or smelled of alcohol.

There is no dispute that Katz asked Kent to take a sobriety test and that Kent refused; Kent argued that he was on his own property and not driving. Katz arrested Kent for suspicion of driving while under the influence of alcohol ("DWI") in violation of 23 V.S.A. § 1201 (1996). Katz asked Kent to turn around and place his hands behind his back; Kent complied. Katz attempted to force Kent's hand and wrist up behind his back and eventually kicked Kent's feet out from under him. At some point, Kent's wrist was broken.

On June 24, 1996, in connection with a State of Vermont ("State") summary procedure for civil suspension of the driver's license of a person whom a law enforcement officer had "reasonable grounds" to believe was violating § 1201, *see* 23 V.S.A. § 1205 (1996), Katz filed an affidavit in the State's District Court for Chittenden County, giving his version of the June 20 events and stating that he "ha[d] probable cause" to believe that Kent had driven while intoxicated, in violation of § 1201. (Affidavit of Jared Katz dated June 24, 1996 (" § 1205 Affidavit"), at 1.) The affidavit was submitted *ex parte;* and although § 1205(c) requires that the accused be given prompt notice of the summary civil suspension and a copy of the officer's affidavit, Kent apparently did not receive Katz's notice and affidavit until much later.

On July 11, 1996, the State filed an information against Kent. It alleged that Kent, in Colchester "on the 20 day of June

1996 did then and there operate a motor vehicle on a public highway while under the influence of intoxicating liquor, to wit; a Jeep, on Macrae Road, in violation of 23 VSA § 1201(a)(2)." (Information dated July 11, 1996 ("Original Information" or "Information").) On July 16, 1996, a Chittenden County District Judge subscribed to the following statement at the foot of the Information: "This information has been presented to me and I have found probable cause, this 16th day of July 1996[.]" *See generally* Vt. R.Crim. P. 5(c) ("If the defendant was arrested without a warrant . . . and the prosecution is upon information, the judicial officer shall determine . . . whether there is probable cause to believe that an offense has been committed and that the defendant has committed it."). *See also* Vt. R.Crim. P. 5(h) (allowing the defendant to challenge such a finding).

Kent was arraigned on the DWI charge on July 16, 1996. He pleaded not guilty and subsequently moved for a "Good Cause Hearing" on that charge. Kent's motion was adjourned several times and was never heard because in January 1997, he and the State agreed to settle the case. The State reduced the charge against Kent from DWI, 23 V.S.A. § 1201(a)(2), to careless and negligent operation of a motor vehicle, in violation of 23 V.S.A. § 1091(a)(1) (1996) ("C & N" or "Negligent Operation"); and Kent pleaded *nolo contendere* to the Negligent Operation charge. In addition, the State agreed not to pursue the civil suspension of Kent's driver's license under 23 V.S.A. § 1205. The agreement was reflected in the following colloquy before the state court:

> STATE: . . . . Judge, we have a resolution in this case. The State's going to amend the DWI to a C & N and we are going to concede the civil to the defendant. And we're going to recommend a

three hundred dollar fine. The State's entering this agreement after reviewing it[ ]s case. As the Court knows, the defendant's arm was injured in this incident and the State is not taking that into consideration. What we're taking into consideration is the evidence we would have if went we to trial. . . .

. . . .

COURT: . . . . I would understand the State's going to reduce the charge to careless and negligent driving, the court is going to enter judgment for the defendant in the civil matter and the defendant will pay a three hundred dollar fine.

(*State v. Kent*, No. 2810–7–96Cncr, Chittenden County, Vermont District Court, Hearing Transcript, January 15, 1997 ("State Tr."), at 2–3.)

The State informed the court that it would submit an affidavit from someone other than Katz to support the Negligent Operation charge, because the conduct underlying that charge had not been observed by Katz:

STATE: Your Honor, the State's going to provide the Court with an affidavit because we are basing this on the operation which Officer Katz did not view, but somebody else did, so I will be providing you with an affidavit on that.

COURT: Today?

STATE: Yes, with—yes.

COURT: Along with the amendment?

STATE: Yes.

. . . .

COURT: All right, the State's Attorney has amended the information and reduced the charge so that the information reads as follows, Mr. Kent. That Dean Kent at Colchester on the 20th day of June, 1996, did then and there operate a motor vehicle on a public highway in a negligent manner, to wit, a Jeep on the

Macrae Road by turning his steering wheel back and forth within his lane. (State Tr. 4–6.) The charge against Kent was duly amended. Hand-editing the Original Information, the State crossed out the words "while under the influence of intoxicating liquor," inserted instead the words "in a negligent manner by turning his steering wheel back & forth within his lane," and changed the statutory section under which Kent was charged from "1201(a)(2)" to "1091(a)." (Information as amended on January 15, 1997 ("Amended Information").)

After reading the Amended Information to Kent and noting the statutory penalties associated with the substituted charge, the court determined that Kent understood the amendment, and it accepted Kent's plea:

COURT: Do you understand the amended charge?

KENT: No contest, sir.

COURT: And you wish to plead no contest to that. And to support that charge, I have an affidavit of Robert Miller which does contain some facts regarding the turning of the steering wheel back and forth a few times. So unless there's anything further you want to say or [your attorney] wants to say, I'll accept your plea.

. . . .

. . . . All right, the Court will enter a finding and judgment of guilty on defendant's no contest plea of careless and negligent driving.

(State Tr. 6–7.)

The State's concession with respect to the civil suspension of Kent's license was apparently made in recognition that the license had been summarily suspended even though notice of the § 1205 proceeding was sent to Kent belatedly, if at all. (*See* State Tr. 3 ("DEFENSE [COUNSEL]: . . . .

[T]he notification never got through."); *id.* at 4 ("DEFENSE [COUNSEL]: ... [I]t just kind of never made it. STATE: Right. COURT: It just never got addressed until a later date.").) The court stated that the State's concession resulted in a "finding for the defendant." (*Id.*)

In June 1999, Kent commenced the present action in state court against Katz and others, principally asserting § 1983 claims for false arrest, malicious prosecution, and use of excessive force in violation of his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution and in violation of state law. The defendants removed the case to federal court and moved for summary judgment.

To the extent pertinent here, the district court denied Katz's motion with respect to Kent's § 1983 claims for false arrest and excessive force and his state-law claims for false arrest, assault, and battery. The court ruled that there were genuine issues of material fact to be tried as to whether Katz was entitled to qualified immunity with respect to those claims.

Katz appealed. As set forth above, this Court dismissed part of the appeal for lack of appellate jurisdiction, leaving only the question of whether Katz was entitled to qualified immunity as a matter of law on the false arrest claims, on the basis that the Vermont District Court's July 16, 1996 finding of probable cause constituted collateral estoppel, precluding Kent from establishing an essential element of a claim for false arrest. For the reasons that follow, we conclude that Katz was not entitled to summary judgment as a matter of law on his defense of qualified immunity.

## II. DISCUSSION

■ A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law. *See, e.g., Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The objective reasonableness test is met if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Since the principle that a warrantless arrest without probable cause violates the Fourth Amendment was clearly established prior to Katz's arrest of Kent in 1996, Katz may be found entitled to qualified immunity only if he actually had probable cause to arrest Kent for driving while intoxicated or if it was objectively reasonable for him to believe he had probable cause for that arrest. The question for this appeal is whether, on the present record, such an entitlement can be determined as a matter of law. We conclude that it cannot.

### A. *Katz's Claim of Qualified Immunity Via Collateral Estoppel*

■ A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest. *See, e.g., Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). It appears to be undisputed that this principle applies as well to a claim of false arrest under Vermont law. Where a court has already determined the issue of probable cause to make an arrest that is the subject of a claim of false arrest, a party may, in

appropriate circumstances, be estopped from relitigating that issue. *See generally Golino v. City of New Haven,* 950 F.2d 864, 868–69 (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992).

■ In considering Katz's claim of qualified immunity based on the contention that Kent is collaterally estopped because of the Vermont District Court's July 16, 1996 finding of probable cause, we look to Vermont law and give that court's finding whatever preclusive effect it would be given under Vermont law. *See, e.g., Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481–83, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Under Vermont law, collateral estoppel is not appropriate unless, *inter alia,* an issue was actually litigated and was necessary to the final judgment in the prior case, and the party against whom estoppel is asserted had adequate opportunity and incentive to litigate the issue:

> Collateral estoppel, or issue preclusion, bars the subsequent relitigation of an issue that was actually litigated and decided in a prior case between the parties, so long as there was a final judgment on the merits and the issue was necessary to resolution of the action.... The elements of issue preclusion are the following:
>
> > (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Bull v. Pinkham Engineering Assocs., Inc.,* 170 Vt. 450, 461, 752 A.2d 26, 35 (2000) (quoting *Trepanier v. Getting Organized, Inc.,* 155 Vt. 259, 265, 583 A.2d 583, 587 (1990)).

> In determining whether collateral estoppel should apply, courts must look to the circumstances of each case, including, among other things, the incentive for the party (against whom estoppel is claimed) to litigate the issue.

*Bull v. Pinkham Engineering Assocs., Inc.,* 170 Vt. at 462, 752 A.2d at 35.

■ Applying these principles to the present case, we conclude that collateral estoppel is inapplicable for several reasons. First, the Vermont judge's July 16 finding of probable cause inscribed on the Original Information was not a final judgment. Such a finding was required as a threshold matter in order to permit the prosecution to proceed because there had been no warrant and no indictment, *see* Vt. R.Crim. P. 5(c); but that finding was open to reconsideration, *see* Vt. R.Crim. P. 5(h) ("Upon request of the defendant, the judicial officer shall review the finding of probable cause.").

Second, although there eventually was a final judgment in the criminal proceeding against Kent, that judgment did not decide the issue of whether Katz had probable cause to arrest Kent for DWI. The DWI charge was changed by the State to one of Negligent Operation, alleging simply that Kent had "turn[ed] his steering wheel back and forth within his lane" (Amended Information); Kent pleaded *nolo contendere* to the latter charge; and Negligent Operation, not DWI, is the charge that was resolved by the final judgment. Further, the affidavit of Kent's friend Robert Miller, submitted by the State to support the Negligent Operation charge, could not have supported a finding of DWI. Miller indicated that he and Kent had been on

Macrae Road driving toward each other on June 20, 1996, and that Kent had turned his steering wheel back and forth a few times to signal Miller to slow down and stop for a quick chat (*see* Affidavit of Robert Miller dated September 13, 1996, ¶¶ 1–3); but Miller also stated that, in that chat, Kent had "appeared normal" and that Miller "did not detect any alcohol on his breath." (*Id.* ¶ 4.) In sum, there was no final judgment that decided the question of probable cause to believe that Kent had driven while under the influence of alcohol.

Nor, given the amendment of the Information to charge Kent with Negligent Operation rather than with DWI, could it be said that a decision as to whether Katz had probable cause to arrest Kent on suspicion of DWI was necessary to the resolution of the criminal case. Intoxication is not an element of the offense of Negligent Operation.

Further, the issue of probable cause to arrest Kent was not actually litigated. As discussed above, the Vermont judge's initial finding of probable cause was, under the Vermont Rules of Criminal Procedure, subject to review if so requested by Kent. Kent did move for a "Good Cause Hearing," but his motion was adjourned several times and was never heard because in January 1997, he and the State agreed to settle the case, eliminating the DWI charge on which Katz had arrested him.

Moreover, given the State's substitution of the Negligent Operation charge for that of DWI, Kent plainly no longer had any incentive to litigate in the criminal case the existence of probable cause to arrest him for DWI. Nor, since the conduct that formed the basis for the Negligent Operation charge was not witnessed by Katz, did Kent have any incentive to seek an adjudication as to what Katz had actually observed before placing him under arrest.

■ Finally, we note that the summary proceeding ostensibly initiated pursuant to § 1205 when Katz filed his § 1205 Affidavit, asserting that he had "probable cause" to believe that Kent was guilty of DWI in violation of § 1201, did not result in any estoppel of Kent. A § 1205 proceeding "is not a criminal prosecution," but rather is a proceeding "to determine whether there should be a suspension of an operator's driving privilege because of his refusal to carry through his implied consent to submit to a sobriety test." *State v. District Court,* 129 Vt. 212, 214, 274 A.2d 685, 686 (1971) (discussing prior version of § 1205). Consequently, the issues are different, and the driver may well have less of an incentive to contest a temporary loss of driving privileges than he would have to challenge a criminal charge. More importantly, although § 1205 requires the officer to file an affidavit in order to initiate a § 1205 proceeding, it does not require him to show probable cause. It requires a showing only of "reasonable grounds" to believe the person was driving under the influence of an intoxicant. 23 V.S.A. §§ 1205(a) and (b)(3). Thus, a license may be suspended even if the driver persuades the § 1205 court that the officer had less than probable cause to suspect him of being intoxicated, so long as the officer met the statutory standard of "reasonable grounds." Accordingly, even had the § 1205 proceeding been properly commenced or conducted against Kent, Kent would have had no incentive in that proceeding to litigate Katz's inflated assertion that there existed probable cause. And finally, the state court did not adjudicate under § 1205 even the question of "reasonable grounds," much less Katz's assertion that he had "probable cause" to believe Kent was intoxicated. As described in Part I above, the State conceded in favor of Kent on the suspension issue.

In sum, although the Vermont District Court stated on July 16, 1996, that it had found "probable cause," that was not a final decision; Kent had not theretofore had an opportunity to litigate the issue of the probable cause for his arrest for DWI; the probable cause issue was not thereafter actually litigated; Kent had no incentive to litigate that issue after the DWI charge was dropped; and no finding of probable cause to arrest Kent for DWI was either encompassed in or necessary to the final judgment convicting him of Negligent Operation. We conclude that the Vermont District Court's finding does not collaterally estop Kent from asserting in this action for false arrest that Katz arrested him for DWI without probable cause.

## B. *Katz's Alternative Contention*

■ Alternatively relying on *Salim v. Proulx*, 93 F.3d 86, 89–90 (2d Cir.1996), Katz contends that he had qualified immunity as a matter of law because it was objectively reasonable for him to believe Kent was intoxicated based on two facts that are undisputed: that Kent was "red-eyed," and that when asked if he had been drinking alcohol Kent said "[n]ot very much," which "amounted to an admission of alcohol consumption." (Katz brief on appeal at 13.) We reject this contention for several reasons.

To begin with, the two undisputed facts on which Katz relies, especially in the circumstances here, are not sufficient indicia of intoxication to permit a conclusion that Katz's belief was objectively reasonable as a matter of law. While relying on the redness of Kent's eyes as a basis for his inference of intoxication, Katz concedes that he had been informed that Kent had been burning brush on the property for 18 days—surely a circumstance that could account for ocular discoloration. And while

Katz contends that Kent's "[n]ot very much" statement, regardless of the intention that lay behind those words, constituted an admission of alcohol consumption, even taken at face value the words "[n]ot very much" would not ordinarily seem to imply "enough to be intoxicated." Thus, what inferences were objectively reasonable from the two facts that are undisputed are factual issues to be resolved by a factfinder.

Further, the existence of probable cause is to be determined on the basis of the totality of the circumstances, *see, e.g., Illinois v. Gates*, 462 U.S. 213, 230–32, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and we cannot conclude that it would have been objectively reasonable as a matter of law for Katz to infer intoxication solely from the redness of Kent's eyes, while ignoring as a possible cause of discoloration the fact that Kent had been burning brush for the past 18 days, and from Kent's statement that he had not been drinking very much, while ignoring all other comportment that might reflect on the state of Kent's sobriety. And indeed, Katz himself, in his § 1205 Affidavit in support of his assertion that he had "probable cause to believe" that Kent had been intoxicated, did not ignore other circumstances. He included the assertions that he had observed Kent walking unsteadily, swaying, slurring his speech, and smelling of alcohol. A factfinder, however, would not be required to credit Katz's assertions as to his observations and could instead believe Kent and his witnesses whose evidence as to Kent's actions and appearance was squarely to the contrary. Thus, the totality of the circumstances cannot be determined as a matter of law but must await resolution of the factual issues.

Finally, Katz's reliance on *Salim v. Proulx* is misplaced. To the extent pertinent here, that case stands for the proposi-

tion that when the defendant accepts, for purposes of a qualified-immunity-based summary judgment motion, the plaintiff's version of the facts, the defendant may immediately appeal the denial of that motion because the objective reasonableness of the undisputed actions may then be susceptible to resolution as a matter of law. *See* 93 F.3d at 91 ("Officer Proulx's claim is that the undisputed facts set forth in plaintiff's own 9(c) Statement entitle him to the defense of qualified immunity as a matter of law.... We need to determine only whether, on plaintiff's version, an immunity defense is established as a matter of law."). Katz does not, however, accept Kent's version of the facts. According to Kent and the affidavits or depositions of other witnesses describing his condition and conduct at the time of the encounter with Katz, Kent was not walking unsteadily; he did not sway; his speech was not slurred; there was no odor of alcohol on his breath; and he appeared normal and not intoxicated. Plainly on Kent's version of the facts it cannot not be said that Katz's belief that there was probable cause to infer that Kent was intoxicated was objectively reasonable as a matter of law.

## CONCLUSION

We have considered all of Katz's arguments on this appeal and have found them to be without merit. For the reasons discussed above, the district court's order denying Katz's qualified-immunity-based motion for summary judgment is affirmed.

JON O. NEWMAN, Circuit Judge, concurring:

The Court rules that a police officer does not have immunity as a matter of law from a claim under 42 U.S.C. § 1983 for false arrest on a criminal charge even though the person arrested was found guilty on his plea of *nolo contendere* to a lesser charge. I join the Court's opinion, which thoroughly explains why the false arrest claim is not barred by collateral estoppel, but I write to consider briefly the separate issue of whether the claim is barred by a common law immunity that has been absorbed into federal civil rights jurisprudence.

As Judge Kearse's opinion explains, Vermont police officer Jared Katz arrested Dean Kent for suspicion of driving while under the influence of alcohol ("DWI"). Pursuant to a plea agreement, the State reduced the charge to careless and negligent operation of a motor vehicle, and Kent entered a plea of *nolo contendere* and was found guilty.

In *Cameron v. Fogarty*, 806 F.2d 380 (2d Cir.1986), this Court ruled that even though a conviction does not always preclude a claim for false arrest under principles of *res judicata* or collateral estoppel, the "common law defense of conviction" does afford an arresting police officer immunity and that such an immunity precludes liability under section 1983 for claims of false arrest and malicious prosecution. *Id.* at 386–89. *See Menard v. Mitchell*, 430 F.2d 486, 491 n. 26 (D.C.Cir. 1970); *Pouncey v. Ryan*, 396 F.Supp. 126, 127 (D.Conn.1975). *Cf. Haring v. Prosise*, 462 U.S. 306, 317–23, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) (conviction does not preclude section 1983 claim for unlawful search). In *Cameron*, however, we described the common law immunity as available in situations where a person "has been convicted of the crime for which he was arrested." *Id.* at 387, 388, 389.

I am not certain whether the common law in general or Vermont's version of it would extend the defense of conviction to situations where the person arrested is convicted of a lesser charge. There are considerations cutting both ways. On the

one hand, it seems somewhat anomalous for the person whose conviction (whether by plea or trial) lawfully subjects him to loss of liberty by imprisonment to obtain damages from an arresting police officer for the usually brief deprivation of liberty caused by an arrest alleged to lack probable cause. On the other hand, if the defense of conviction were not limited to conviction of the crime for which the arrest was made, an arresting officer, anticipating ultimate conviction for a minor offense, could with impunity arrest for major charges that might sometimes subject the person arrested to prolonged pretrial detention. This latter consideration prompted us to rule, in a somewhat analogous context, that a finding of probable cause to arrest on a minor charge does not preclude a section 1983 claim for malicious prosecution on a more serious charge. *See Posr v. Doherty,* 944 F.2d 91, 100–01 (2d Cir.1991).

In any event, because *Cameron* so explicitly stated that the conviction defense applies where a person has been convicted of the crime for which he was arrested, I agree that Kent's conviction for careless and negligent operation of a motor vehicle does not preclude his claim for false arrest on the DWI charge. What this case illustrates is that prosecutors consenting to reduce criminal charges in exchange for a defendant's plea should consider including in their agreements at least a settlement, and sometimes a complete release, of related civil liability claims against law enforcement officers. *Cf. Newton v. Rumery,* 480 U.S. 386, 416, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (rejecting *per se* invalidity of agreements to release civil claims in exchange for dismissal of all criminal charges); *Schloss v. Bouse,* 876 F.2d 287, 292 (2d Cir.1989) ("[O]btaining a release, which is somewhat analogous to plea bargaining, may be a valid part of the government attorney's function, even when de-

manded in exchange for the dropping of criminal charges.").