VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    24-AP-158



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## <u>ENTRY ORDER</u>

DECEMBER TERM,   2024

Arthur VanBuren v. Alex Hilliard\*

}   APPEALED FROM:
}   Superior Court, Rutland Unit,
}   Family Division
}   CASE NO. 24-FA-00530
    Trial Judge: Alexander N. Burke

In the above-entitled cause, the Clerk will enter:

Mother appeals pro se from the issuance of a relief-from-abuse (RFA) order against them.\* We affirm.

The parties, who are no longer a couple, have two children together. Father filed an RFA complaint in February 2024 on behalf of one of the children, who was ten years old. He alleged that mother abused the child and that there was a danger of further abuse to this child and the parties' younger son. Mother and father testified at a final hearing, as did mother's neighbor. Various exhibits were admitted into evidence without objection. These included audio and video recordings of mother interacting with the children inside their apartment, which could be heard in the hall and from the neighbor's apartment. Mother's neighbor testified that he was concerned for the children's welfare given the noises and sounds of violence that he heard and believed they should be documented. The neighbor authenticated and testified about the recordings. The neighbor also testified that in February or March 2024, the most frequent sound he overheard was "one of the children yelling 'ow' with increasing intensity." He stated that "it definitely seemed like someone was in pain, being caused pain, and a kind of sharp, angry undertones from [mother], including encouraging the children to hush, and the 'ows' would elevate in volume and intensity." The neighbor heard alarming noises in the afternoon and the evening. He was familiar with the children's voices having been their neighbor for several years and he had "distinctly heard this from the older children in question." He heard "audible smack[s]" and screams of "ow" and shrieks from the children. At the close of the hearing, the court concluded on the record that father was entitled to a six-month RFA order.

The court found as follows. When the older child arrived at father's house in February 2024, father saw a bruise on the child's left arm, approximately one to two inches long. The

___

\* Defendant uses they/them pronouns. We refer to defendant as "mother" for convenience as defendant testified that this is how the children refer to them.

bruise was documented in a photograph. The court found only that the child received the bruise while in mother's custody. The parties' younger child also had a scratch or cut on his face. Mother testified that most of the time, they physically disciplined the children if they had to repeat things multiple times. Five percent of the time, however, they reacted immediately out of frustration, striking out at the children. The court found that while parental discipline, including corporal punishment, did not necessarily rise to the level of abuse, it could constitute abuse when a parent struck a child out of frustration, outside of the disciplinary context.

The court found that the audio recordings reflected mother yelling, demonstrating high levels of anger, and using vulgar language that was both inappropriate and detrimental to a ten-year-old child. The court further found that the audio recordings reflected mother reacting to a situation in a violent and inappropriate way. The court considered the recordings to be consistent with mother's testimony that five percent of the time, they reacted to the children physically out of frustration. The recordings were also consistent with the neighbor's testimony. The neighbor stated that he heard mother's loud anger through the apartment walls and mother's anger was directed specifically at the children. The outbursts came in phases, sometimes more often and sometimes less frequently. The neighbor heard mother engage in this behavior during the period leading up to the filing of the complaint in February 2024.

The court concluded that father met his burden of proving that abuse occurred. It found that mother struck the older child out of frustration or anger, which placed the child's welfare at risk, including his physical health. The child's welfare was either harmed or at substantial risk of harm by the violence perpetrated by mother. The court considered this reactionary behavior sufficient to find that abuse occurred. It found a danger of further abuse given the neighbor's testimony about the frequency of hearing reactionary anger through the walls of both apartments, as well as the recordings of this behavior that were submitted into evidence. The court issued an RFA order that restrained mother from, among other things, committing further acts of abuse against the children and using corporal punishment. This appeal followed.

Mother first argues that the court erred in admitting the audio and video recordings because their admission violated well-established principles of privacy and due process. Mother asserts that the neighbor did not raise any concerns with them about their behavior. In a related vein, mother argues that the court's decision was unjust because it was inconsistent with their privacy rights.

Mother did not raise these arguments below and cannot do so for the first time on appeal. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). As indicated above, mother did not object to the admission of this evidence. We thus reject these claims of error.

For a similar reason, we reject mother's challenge to the constitutionality of the statutory definition of an "abused or neglected child." Mother fails to show that they raised this issue below and we will not address this argument for the first time on appeal. See id.

Mother next argues that the court should have given greater consideration to their diagnosed communication disorder and its effect on the volume of their voice during interactions with the children. Mother also suggests that the court erred in relying on a photograph of a bruise on the child "without adequately reviewing the image during the hearing" and that the photograph is otherwise insufficient to support the court's decision.

2

These arguments concern the trial court's assessment of the weight of the evidence and the credibility of witnesses, which are matters reserved exclusively for the trial court. See Cabot v. Cabot, 166 Vt. 485, 497 (1997) ("As the trier of fact, it [is] the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence."). We note that the court stated that it could see the photograph of the bruise on its computer, contrary to mother's assertion, even if the photograph was not projected onto a big screen in the courtroom. In any event, the court did not rely on the photograph to support its decision. Instead, it found persuasive the neighbor's testimony and the recordings of mother's interactions with the children, which it considered consistent with mother's acknowledgment of striking the children out of frustration.

We thus turn to mother's challenge to the court's findings and the sufficiency of the evidence. We review the court's findings "in the light most favorable to the prevailing party below, disregarding the effect of any modifying evidence," and the findings will stand unless there is no credible evidence to support them. Stickney v. Stickney, 170 Vt. 547, 548 (1999) (mem.). We will uphold the court's conclusions if supported by its findings. Begins v. Begins, 168 Vt. 298, 301 (1998).

The court did not commit clear error in finding mother's testimony consistent with the neighbor's testimony and the recordings of mother's behavior. Mother testified that they struck the children in February or March 2024. When asked in what context this occurred, mother responded that ninety-five percent of the time, if they struck the children, it was after mother had said the same thing to the children ten times or more. Five percent of the time, they would strike them "in the moment." Mother stated that they sometimes reacted out of stress and frustration. While mother indicated that anger and frustration were not the primary drivers of their behavior, the court concluded otherwise based on the neighbor's testimony and the recordings of mother's behavior, which was the evidence on which it primarily relied.

Finally, we reject mother's assertion that the court relied on unclear and inconclusive evidence and that its decision was inconsistent with the statute or our case law. The court applied the appropriate legal standard, and its decision is supported by the findings, which are in turn supported by the evidence. We find no error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice