2003 VT 53

## In re Proposed Sale of Vermont Yankee Nuclear Power Station, et al. (New England Coalition, Appellant)

[829 A.2d 1284]

No. 02-368

Present: **Amestoy, C.J., Dooley, Skoglund, JJ., and Teachout, Supr. J., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed July 25, 2003

*James A. Dumont* of *Law Office of James A. Dumont, P.C.*, Middlebury, for Appellant.

*James Volz,* Montpelier, for Appellee Vermont Department of Public Service.

*Victoria J. Brown* and *Peter F. Young* of *Eggleston & Cramer, Ltd.,* Burlington, for Appellees Entergy Nuclear Vermont Yankee, PLLC and Entergy Nuclear Operations, Inc.

*John H. Marshall, Nancy S. Malmquist* and *Robert A. Miller, Jr.* of *Downs Rachlin Martin PLLC,* St. Johnsbury, for Appellee Vermont Yankee Nuclear Power Corp.

*Kenneth C. Picton,* Rutland, and *Morris L. Silver,* Benson, for Appellee Central Vermont Public Service Corp.

*Peter H. Zamore* of *Sheehey Furlong & Behm P.C.,* Burlington, for Appellee Green Mountain Power Corp.

¶ 1. **Amestoy, C.J.** The New England Coalition (NEC) appeals from an order of the Vermont Public Service Board approving the sale of the Vermont Yankee Nuclear Power Station to Entergy Nuclear Vermont Yankee, L.L.C. (ENVY). NEC claims error in the Board's conclusions that ENVY and its operating affiliate, Entergy Nuclear Operating Company (ENO), do not need a certificate of public good (CPG) under 30 V.S.A. § 248, and that ENVY is eligible for a CPG under 30 V.S.A. § 231. We affirm.

¶ 2. Vermont Yankee Nuclear Power Station began operating in 1972 after receiving a CPG from the Public Service Board (PSB) in 1966 under 30 V.S.A. § 102. Vermont Yankee is the state's largest electric generation station, and has provided nearly one-third of Vermont's electricity since it began operating. The plant is owned by Vermont Yankee Nuclear Power Corporation (VYNPC). Vermont's two largest electric utilities, Central Vermont Public Service Corporation (CVPS) and Green Mountain Power Corporation (GMP) together own fifty-five percent of VYNPC. CVPS and GMP, as well as the facility's other utility owners, have a contract with Vermont Yankee under which each utility purchases a share of Vermont Yankee's capacity and energy equal to their ownership interest. Thus, together CVPS and GMP purchase fifty-five percent of the nuclear plant's capacity and energy.

¶ 3. On September 4, 2001, the PSB opened an investigation into the proposed sale of Vermont Yankee to ENVY. Under the proposal, ENVY agreed to purchase the station for a cash payment of $180 million, and VYNPC agreed to purchase all of the station's output through the term of Vermont Yankee's current license, which expires in March 2012. As a result of that agreement, GMP and CVPS will continue to receive power from Vermont Yankee until 2012.

¶ 4. In the PSB proceeding, ENVY and ENO sought certificates of public good under 30 V.S.A. § 231 for ENVY to own, and for ENO to operate, Vermont Yankee. See 30 V.S.A. § 231(a) (authorizing PSB to grant a certificate of public good to own or operate an electric company if doing so "will promote the general good of the state"). The PSB permitted NEC and a number of other intervenors to participate in the proceeding. NEC moved to dismiss the case, arguing, among other things, that the transaction required review and approval under 30 V.S.A. § 248 because ENVY and ENO intended to sell most of Vermont Yankee's power outside Vermont. By order dated December 14, 2001, the PSB denied NEC's motion. The PSB concluded that § 248 was inapplicable because the circumstances under which the statute applies — new construction, certain purchases of out-of-state power, or investment in out-of-state generation facilities — were not present in the proposed transaction. After holding public and technical evidentiary hearings on the proposed sale, the PSB concluded that the sale to ENVY, and operation of the plant by ENO, would promote the general good and issued the companies CPGs under § 231 accordingly. This appeal followed.

■ ¶ 5. NEC limits its appeal to two questions of law. First, the organization challenges the PSB's conclusion that because the transaction did not involve construction of new facilities, ENVY and ENO did not have to obtain a CPG under 30 V.S.A. § 248. Second, NEC claims the PSB erred by granting ENVY a CPG under § 231. We review NEC's claims under a deferential standard. *In re Quechee Serv. Co.*, 166 Vt. 50, 52, 690 A.2d 354, 358 (1996). PSB orders "enjoy a strong presumption of validity." *In re Green Mountain Power Corp.*, 162 Vt. 378, 380, 648 A.2d 374, 376 (1994). When reviewing the PSB's interpretation of a statute within its particular expertise, we look for a compelling indication of error, and in its absence, we will uphold the PSB's decision. *In re Verizon New England Inc.*, 173 Vt. 327, 334-35, 795 A.2d 1196, 1202 (2002).

■ ¶ 6. NEC claims that after the sale, ENVY will sell Vermont Yankee's output primarily to customers outside Vermont, thus changing the basis upon which the Board originally granted the plant's CPG over thirty years ago. Analogizing to principles in zoning and land use law, NEC argues that the alleged change in use of Vermont Yankee triggers review under § 248. In particular, NEC asserts that § 248(b) requires the PSB to weigh the costs and benefits to Vermont of hosting a nuclear power plant that sells most of its power to entities outside Vermont. NEC's claim must fail because its factual premise, that the proposed sale means a change in use of the facility, has no support in the PSB's fact findings, which NEC does not challenge on appeal. See *Bevins v. King*, 147 Vt. 203, 206, 514 A.2d 1044, 1046 (1986) (unchallenged findings are binding in the Supreme Court).

¶ 7. The PSB found that under the terms of the transaction and the associated power purchase agreement, VYNPC will purchase all of the station's output until March 2012, and CVPS and GMP will continue to receive fifty-five percent of that output after the sale just as they did before the sale. Thus, until Vermont Yankee's license expires in March 2012, the majority of the facility's output is dedicated to serve Vermont and not other states. The PSB's findings show that ENVY and ENO will not change the use of Vermont Yankee from the use its prior owners made of the plant before the sale. Therefore, even if we agreed with NEC that § 248 applied to a change in use of an existing power plant certificated before the effective date of § 248, it does not apply to ENVY's purchase of Vermont Yankee because no change in use of the facility will occur after the sale according to the PSB's unchallenged findings.

¶ 8. NEC claims, however, that the plant's new owners can withdraw from the power purchase agreement with VYNPC at any time, and could continue to operate the plant for the benefit of people outside Vermont beyond the expiration of Vermont Yankee's current license. NEC's argument is predicated on two assumptions, each of which is entirely speculative. First, NEC assumes that the plant's new owners will withdraw from the power purchase agreement and would operate the plant after the expiration of the current license solely for the benefit of out-of-state customers. NEC's claim is, at this point, only hypothetical, and has no support in the PSB's findings. We will not render an opinion on a speculative claim that has no basis in the findings of the tribunal below. Second, even if future events demonstrate that NEC's speculative concerns are well founded, NEC's assumption that no remedy exists is not. See *infra*, at ¶ 11.

¶ 9. NEC's § 248 argument is also unavailing because the statute's plain language does not require PSB review if an existing generation plant undergoes a change in use or ownership. The PSB concluded that its review under § 248(a)(2) is triggered when an entity subject to PSB jurisdiction seeks to construct new electric generation facilities, an event not proposed as part of the transaction. Section 248(a) requires energy utilities seeking to construct new facilities, purchase electric capacity or energy from a source outside Vermont, or invest in out-of-state electric generation or transmission facilities to obtain a CPG from the Public Service Board. 30 V.S.A. § 248(a). Subsection (a)(2)* of the statute provides:

> (2) Except for the replacement of existing facilities with equivalent facilities in the usual course of business, and except for electric generation facilities that are operated solely for on-site electricity consumption by the owner of those facilities:
>
> (A) no company, as defined in section 201 of this title, and no person, as defined in 10 V.S.A. § 6001(14), *may begin site preparation for or construction of* an electric generation facility or electric transmission facility within the state which

---

* The PSB and the parties focused their analysis on § 248(a)(2) and not subsection (a)(1), which addresses certain power contracts for electricity generated outside Vermont and investments in out-of-state electric generation facilities. Therefore, our analysis focuses on § 248(a)(2) as well.

is designed for immediate or eventual operation at any voltage, and

(B) no such company may exercise the right of eminent domain in connection with *site preparation for or construction of* any such transmission or generation facility, unless the public service board first finds that the same will promote the general good of the state and issues a certificate to that effect.

30 V.S.A. § 248(a)(2) (emphasis added). In unambiguous terms, § 248(a)(2) enumerates just two events that trigger the statute's application: (1) "site preparation for" or (2) "construction of" an electric transmission or generation facility. If the facility already exists, as in Vermont Yankee's case, § 248(a)(2) applies only if the site preparation or construction is outside the usual course of business and involves new facilities that are neither replacement facilities nor equivalent to those that currently exist. See *id.* ("Except for the replacement of existing facilities with equivalent facilities in the usual course of business" no utility may commence site preparation for or construction of an electric transmission facility without a § 248 certificate.). The statute's triggering conditions are not present under the facts of the transaction here because the purchase and sale agreement does not call for any construction.

¶ 10. Other sections of § 248 are consistent with that interpretation of the statute's applicability. Indeed, by its own terms, the analysis § 248(b) requires must be done when the PSB considers any "purchase, investment or *construction*" covered by the statute. *Id.* § 248(b) (emphasis added); see also *id.* § 248(b)(6) (before issuing a CPG under § 248, PSB must find that company's purchase, investment *or construction* is consistent with company's approved least cost integrated plan) (emphasis added). Subsection (a)(4)(A) requires the PSB to hold a nontechnical public hearing "in at least one county in which any portion of the *construction of the facility is proposed to be located.*" *Id.* § 248(a)(4)(A) (emphasis added). Under subsection (k)(1), the PSB may waive "the prohibitions upon *site preparation for or construction of* an electric transmission facility contained in [§ 248]" pending full review under the statute. *Id.* § 248(k)(1) (emphasis added). The emphasized language highlights the Legislature's intent to bring within the statute's purview proposed construction, i.e., a facility that has not yet been built. The language the Legislature employed in § 248(a)(2) evinces no intent to require the owner or operator of an

existing electric generation plant to seek § 248 review before changing its sales portfolio or selling its ownership interest.

¶ 11. We emphasize that our holding is limited to the present facts. If Vermont Yankee had received a § 248 CPG before its construction, and the station's owners thereafter changed the use that formed the basis for its § 248 CPG, our analysis of the issue would likely be different. We note, however, that the PSB has authority under 30 V.S.A. § 102 and § 231 to amend or revoke a CPG for good cause. See 30 V.S.A. § 102(c) ("For good cause, after an opportunity for hearing, the board may amend or revoke any certificate awarded under the provisions of this section."); *id.* § 231 (same). Good cause to amend or revoke ENVY and ENO's CPGs might be found if the companies materially alter the circumstances they presented to the PSB as grounds for it to find that the sale and associated power purchase agreement promote the general good of Vermont. In sum, we conclude that the PSB correctly rejected NEC's claim that ENVY and ENO must obtain a § 248 CPG for their purchase and operation of Vermont Yankee.

■ ¶ 12. NEC next claims that the PSB erred by granting ENVY a CPG under § 231, but does not challenge the CPG issued to ENO. NEC first claims that ENVY defined no Vermont service territory in its request, and therefore the PSB issued the § 231 CPG erroneously. NEC also claims that any CPG granted under § 231 requires the recipient to sell its electricity wholly within Vermont, something that ENVY did not intend to do. We find no merit to these arguments. NEC's service territory claim fails because the PSB defined the service territory served by Vermont Yankee as the entire state of Vermont. Further, § 231 applies to any corporation that seeks to own a business over which the PSB has jurisdiction. 30 V.S.A. § 231(a). Under 30 V.S.A. § 203(1), the PSB has jurisdiction over any company that manufactures, transmits, distributes or sells electricity "to be used ultimately by the public." *Id.* § 203(1). As the PSB found, the electricity manufactured by Vermont Yankee will ultimately be used by ratepayers of GMP and CVPS under the power purchase agreement the PSB approved as part of the sale to ENVY. ENVY was thus required to obtain a CPG under § 231 before it could lawfully own VYNPC, and the PSB was correct in so concluding.

¶ 13. NEC also claims that ENVY should have sought a CPG under 30 V.S.A. § 102 rather than § 231 because the latter section does not apply to an electric generation facility that is not a public service company. We decline to address this claim because it was neither

raised nor decided below. Contentions not raised or fairly presented below are not preserved for appeal. *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000). The issue must be presented with sufficient specificity and clarity to give the tribunal below a fair opportunity to rule on it. *Id.* That did not happen here, and we agree with ENVY, ENO and the Department of Public Service that NEC has waived this claim on appeal.

*Affirmed.*