NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 77

No. 2016-399

| | |
|---|---|
| In re Programmatic Changes to Standard-Offer Program & Investigation into Establishment of Standard-Offer Prices (Allco Renewable Energy Limited and PLH LLC, Appellants) | Supreme Court<br><br>On Appeal from<br>Public Service Board<br><br>April Term, 2017 |

James Volz, Chair

Thomas Melone, New York, New York, for Appellants.

Geoffrey Commons, Acting Director for Public Advocacy, and Jeanne Elias, Special Counsel, Montpelier, for Appellee Department of Public Service.

PRESENT: Skoglund, Robinson, Eaton and Carroll, JJ., and Burgess, J. (Ret.), Specially Assigned

¶ 1. **SKOGLUND, J.** Allco Renewable Energy Limited and PLH LLC (collectively Allco) appeal the Public Service Board's order denying their motion to reconsider. As in its motion to reconsider, Allco argues on appeal that the Board was required to award standard-offer contracts to several solar projects because they provided "sufficient benefits" to the operation of Vermont's electric grid, as set forth in 30 V.S.A. § 8005a(d)(2). Because Allco's claims relating to the correct application of § 8005a(d)(2) were neither raised nor decided below, we decline to address them on appeal. Accordingly, we conclude that the Board did not err in denying Allco's motion for reconsideration, and affirm.

¶ 2. The standard-offer program is a component of Vermont's Sustainably Priced Energy Enterprise Development (SPEED) program, which promotes the development of renewable energy in Vermont. See id. § 8001. The standard-offer program—codified in 30 V.S.A. § 8005a—provides the Public Service Board with the authority to offer power-purchase contracts to new renewable-energy plants if the proposed plants satisfy certain requirements; for example, the plant must be located in Vermont, have a capacity of 2.2 megawatts or less, and comply with other restrictions. Id. § 8005a(b).

¶ 3. Allco's appeal involves the interplay between two categories of standard-offer contracts. The first type of contracts count against the annual cumulative capacity; the second type do not count against the cumulative capacity. Id. § 8005a(c), (d). As described below, § 8005a and the Board orders interpreting the statute set forth distinct qualification requirements for the contract types.

¶ 4. Those contracts that count against the cumulative capacity are governed by § 8005a(c).[1] That subsection requires the Board to issue standard offer contracts until a certain cumulative plant capacity is reached; each year, the Board sets the available capacity for new plants and then receives proposals to fill that capacity. Id. § 8005a(c). In a March 1, 2013 order,[2] the Board established a request-for-proposals mechanism to determine which standard-offer projects would fill the annual cumulative capacity. Establishment of Standard-Offer Prices & Programmatic Changes to the Standard-Offer Program, Docket Nos. 7873 & 7874, at 22-26 (Vt.

_____

[1] The text of 30 V.S.A. § 8005a(c) reads: "In accordance with this subsection, the Board shall issue standard offers to new standard offer plants until a cumulative plant capacity amount of 127.5 MW is reached." The subsection then sets forth procedures relating to the annual amounts, reserved blocks, and other elements of the cumulative capacity program. Id. § 8005a(c)(1), (2).

[2] This Board order was promulgated in response to Vermont Energy Act of 2012, which made significant changes to the standard-offer program, including establishing a market-based mechanism for standard offer prices. See 2011, No. 170 (Adj. Sess.), § 4.

Public Serv. Bd. Mar. 1, 2013) [hereinafter 2013 Board Order], available at

http://www.vermontstandardoffer.com/standard-offer-program-summary/

[https://perma.cc/LE86-S9VH].

¶ 5.    The second type of standard-offer contract applies to plants that do not count towards the cumulative capacity, including those that provide "sufficient benefits" to the electric grid. See 30 V.S.A. § 8005a(d)(2).[3] As set forth in the 2013 Board Order, to satisfy the "sufficient benefits" standard, the plant must be "intended to mitigate transmission and distribution constraints, as opposed to those that provide more generalized benefits." 2013 Board Order at 44; see also 30 V.S.A. § 8005a(d)(2). The 2013 Board Order also adopted a screening framework and guidelines to award plants standard-offer contracts under § 8005a(d)(2), outside of the cumulative capacity. See 2013 Board Order at 49-51.

¶ 6.    With that background in mind, here are the facts leading to Allco's appeal. On April 1, 2016, the standard-offer facilitator issued a request for proposals to meet the annual requirements of 30 V.S.A. § 8005a(c)—that is, the subsection governing cumulative capacity

_____

[3] 30 V.S.A. § 8005a(d) states in part:

   The following categories of plants shall not count toward the cumulative capacity amount of subsection (c) of this section, and the Board shall make standard offers available to them provided that they are otherwise eligible for such offers under this section:

   . . . .

   (2) New standard offer plants that the Board determines will have sufficient benefits to the operation and management of the electric grid or a provider's portion thereof because of their design, characteristics, location, or any other discernible benefit. To enhance the ability of new standard offer plants to mitigate transmission and distribution constraints, the Board shall require Vermont retail electricity providers and companies that own or operate electric transmission facilities within the State to make sufficient information concerning these constraints available to developers who propose new standard offer plants.

3

standard-offer contracts described above. In defining eligibility for the award group, the request for proposals specifically cited to 30 V.S.A. § 8005a(c) and stated that the available annual capacity in 2016 was approximately 6.375 megawatts. The facilitator received twenty-four proposals. After allocating technology specific set-asides for four small wind projects and one large wind project, approximately 3.875 megawatts of plant capacity remained for solar projects. Of the eighteen solar projects submitted, Allco submitted eleven. The combined megawatt capacity of the eighteen proposed solar projects was 37.23 megawatts, well over the remaining annual capacity. Following its normal procedures, the Board ranked the solar projects from lowest price to highest price per kilowatt hour and selected the projects based on the price offered. Once the Board filled the remaining 3.875 megawatts with the lowest priced projects, no additional cumulative capacity projects were authorized. Only two solar projects received standard-offer contracts, one of which was an Allco project. On May 27, 2016, the Board awarded standard-offer contracts to the two solar projects as well as to the five wind projects and established a reserve with two additional solar projects.

¶ 7. Allco filed a motion to reconsider the Board's determination. In the motion, Allco moved for "the Board to award standard offer contracts to all the remaining eligible proposals submitted" and cited 30 V.S.A. § 8005a(d) as support for its contention that the contracts should be awarded outside of the cumulative capacity. Allco argued that § 8005a(d) required the Board to award standard-offer contracts to renewable-energy plants that provide "sufficient benefits" to the operation and management of the electric grid. Because each of the remaining proposals satisfied this "sufficient benefits" test, Allco claimed that the Board was required to grant standard-offer contracts to the remaining projects outside of the cumulative capacity.

¶ 8. The Board denied Allco's motion to reconsider. In doing so, the Board noted that the purpose of the request for proposals was for standard-offer projects that met the annual capacity requirements set forth in 30 V.S.A. § 8005a(c). Because the facilitator's request for proposals and

4

the Board's subsequent order did not invoke the "sufficient benefits" test set forth in 30 V.S.A. § 8005a(d), the Board concluded that Allco's motion for reconsideration was outside the scope of the request for proposals. The Board further noted that Allco could pursue a standard-offer contract outside of the cumulative capacity by following the procedures in the 2013 Board Order. Allco appealed.

¶ 9. On appeal, Allco again focuses on the application of § 8005a(d)(2).[4] Allco argues that the Board used the wrong framework for determining whether its proposed projects should be awarded standard-offer contracts as plants outside the cumulative capacity under § 8005a(d)(2). Allco emphasizes § 8005a(d)(2)'s language and claims that the Board's interpretation of this language erroneously limits the "sufficient benefits" test to those energy plants that "mitigate transmission and distribution constraints." 2013 Board Order at 44. Allco further argues that § 8005a(d)(2) is not limited in this manner and that the language relating to mitigation is illustrative, not exclusive. Based on this interpretation, Allco argues that it was not necessary to prove that its proposed projects mitigate transmission and distribution constraints and that, as a result, the projects should have been awarded standard-offer contracts under § 8005a(d)(2). Thus, according to Allco, the Board should not have held that the plants "were not plants eligible for contracts outside the cap."

¶ 10. This was not the Board's holding; instead, the Board awarded five standard-offer contracts pursuant to § 8005a(c). After Allco's motion for reconsideration first raised the applicability of § 8005a(d)(2), the Board denied the motion as outside the scope of the 2016 request for proposals relating to the annual cumulative capacity. Because the Board's process did not involve § 8005a(d)(2) and because Allco failed to properly raise its claims relating to

---

[4] Allco does not challenge the Board's decision to award standard-offer contracts to five projects under 30 V.S.A. § 8005a(c).

5

§ 8005a(d)(2), we decline to address them on appeal.[5]  In re Proposed Sale of Vt. Yankee Nuclear Power Station, 2003 VT 53, ¶ 13, 175 Vt. 368, 829 A.2d 1284 ("We decline to address this claim because it was neither raised nor decided below.").

¶ 11.    As described above, the request for proposals proceeded under the statutory framework of 30 V.S.A. § 8005a(c), as implemented by the request-for-proposal mechanism described in the 2013 Board Order.  As part of this process, the facilitator requested proposals pursuant to § 8005a(c) and the facilitator further specified that the available annual capacity in 2016 was approximately 6.375 megawatts.  The Board's May 27, 2016 order reiterated that the request for proposals was used "to solicit standard-offer projects to meet the requirements of 30 V.S.A. § 8005a(c)."  This order then described the cumulative capacity available for 2016 and detailed the process for arriving at the standard-offer contracts for 2016 before ordering the award of five standard-offer contracts, including contracts for two solar projects.  Plainly, the entire process was conducted under the authority of § 8005a(c), not § 8005a(d).  Moreover, at no time during this process—from the initial request for proposals to the award of standard-offer contracts—did Allco ask the Board to rule on the applicability of 30 V.S.A. § 8005a(d) and the "sufficient benefits" test.  Cf. In re Yankee Nuclear Power Station, 2003 VT 53, ¶ 13 (declining to address issue not raised below).

¶ 12.    Instead, Allco first raised the argument that its projects qualified under the "sufficient benefits" test in its motion for reconsideration.  On appeal, Allco argues that this motion "could be viewed as an independent request for the Board to award contracts to Allco under 30 V.S.A. § 8005a(d)(2)."  As we noted in In re Entergy Nuclear Vermont Yankee, LLC, we have held that post-judgment motions may sufficiently preserve issues if the "asserted error did not arise

---

[5]  We similarly do not address the Board's alternative arguments that Allco was collaterally estopped from challenging the 2013 Board Order and that Allco did not comply with Vermont Rule of Civil Procedure 59(e).

6

prior to the judgment." 2007 VT 103, ¶ 14, 182 Vt. 340, 939 A.2d 504. In this matter, by contrast, Allco's motion was filed after the 2016 request for proposals under § 8005a(c) and after the Board awarded contracts pursuant to the 2016 cumulative capacity; thus, Allco had the opportunity and means to raise its argument regarding § 8005a(d)(2) during the initial request for proposals. Although it is true that "in certain circumstances litigants may preserve issues in post-judgment motions, they may not do so when those issues should have been raised in earlier proceedings before the Board." [6] In re Entergy Nuclear, 2007 VT 103, ¶ 15.

¶ 13.    Moreover, even if we concluded Allco's motion for reconsideration sufficiently raised the issue, Allco fails to address the Board's argument on appeal that Allco's § 8005a(d)(2) argument required further factual development. One purpose of the preservation rule is to ensure that the Board can give all parties the opportunity to present evidence, to submit arguments, and to rebut those arguments if necessary. In re Cent. Vt. Pub. Serv. Corp., 2006 VT 70, ¶ 11, 180 Vt. 563, 905 A.2d 616 (mem.) (upholding Board's ruling that post-hearing motion "deprived the Board of important evidence necessary to test it in the crucible of an adversary hearing"). In this case, not only did Allco not raise the issue at the proper time, but also Allco failed to provide an adequate factual basis for the Board to determine that the solar projects qualified under the "sufficient benefits" test. Yankee Nuclear Power Station, 2003 VT 53, ¶ 13 ("The issue must be presented with sufficient specificity and clarity to give the tribunal below a fair opportunity to rule on it.").

Affirmed.

FOR THE COURT:

_____
Associate Justice

---

[6]   For example, in In re Entergy Nuclear, we distinguished post-judgment motions that involved the alleged misuse of evidence that became apparent only after the agency issued its final decision. 2007 VT 103, ¶ 14. Because these asserted evidentiary errors did not arise prior to the judgment, "opposition to the use of the evidence in these cases had to be raised in a post-judgment motion." Id.

7