NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 39

Nos. 23-AP-356 & 23-AP-357

| | |
|---|---|
| In re Northwestern Medical Center Fiscal Year 2024 | Supreme Court |
| In re Rutland Regional Medical Center Fiscal Year 2024 | |
| | On Appeal from |
| | Green Mountain Care Board |
| | |
| | April Term, 2024 |

Owen Foster, Chair

Christina A. Jensen and Gary L. Franklin of Primmer, Piper, Eggleston & Cramer, PC, Burlington, for Appellants Northwestern Medical Center and Rutland Regional Medical Center.

Charity R. Clark, Attorney General, and Ryan P. Kane, Assistant Attorney General, Montpelier, for Appellee Green Mountain Care Board.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **COHEN, J.** These consolidated appeals involve two decisions of the Green Mountain Care Board (GMCB) approving the proposed budgets submitted by Northwestern Medical Center (Northwestern) and Rutland Regional Medical Center (Rutland Regional), subject to certain conditions. On appeal, Northwestern and Rutland Regional challenge the GMCB's imposition of budgetary conditions that capped increases to rates charged to commercial payers. However, neither Northwestern nor Rutland Regional properly raised their claims with the GMCB, leaving them unpreserved for our review. Accordingly, we affirm.

¶ 2. We begin with a brief overview of the legal framework that forms the backdrop for these appeals. The GMCB is an independent board that performs several regulatory functions in the health care industry. See 18 V.S.A. § 9371. Among its purposes is to "reduc[e] the per-capita

rate of growth in expenditures for health services in Vermont across all payers while ensuring that access to care and quality of care are not compromised." Id. § 9372(2). To do so, the Legislature directed the GMCB to "review and establish hospital budgets" on an annual basis. Id. § 9375(b)(7); id. § 9456(d)(1). The GMCB must perform that function in a manner that is consistent with statutorily mandated principles that form the foundation of Vermont's healthcare reform efforts. Id. § 9375(a). Included among those is the need for mechanisms that "contain[] all system costs" and reduce "sources of excess cost growth." Id. § 9371(10).

¶ 3. Each year, every hospital in Vermont must file with the GMCB "a budget for the forthcoming fiscal year," which begins on October 1. Id. § 9454(a)(1), (b). Hospitals must submit their proposed budgets, along with other required information, by July 1 of each year. Hospital Budget Review, § 3.203, Code of Vt. Rules 80 280 003 [hereinafter GMCB Rule 3.000], http://www.lexisnexis.com/hottopics/codeofvtrules.

¶ 4. The GMCB's review and establishment of a hospital's budget is guided by several considerations. See id. § 3.306(b). Among those are GMCB-established "benchmarks" that set forth the criteria a hospital must satisfy when creating its proposed budget. Id. §§ 3.202(a), 3.306(b)(6); 18 V.S.A. § 9456(b). The GMCB must provide these benchmarks to hospitals by March 31. GMCB Rule 3.000, § 3.202(a). In its review of a hospital's budget, the GMCB also considers statutory requirements and any other issues it deems relevant for the fiscal year. See id. § 3.101.

¶ 5. During the review process, the GMCB must solicit public comment and meet with hospitals to review and discuss proposed budgets. See id. § 3.306(a); 18 V.S.A. § 9456(b)(3), (5)-(7). It may also "hold public hearings concerning the hospitals' budgets" once it receives the required budgetary and financial information from those hospitals. GMCB Rule 3.000, § 3.302. The GMCB must establish a hospital's budget by September 15 and issue a written decision on its budget approval by October 1. 18 V.S.A. § 9456(d)(1). The written decision constitutes a final

2

appealable order that reflects a hospital's established budget.  GMCB Rule 3.000, § 3.307; 18 V.S.A. § 9381.

¶ 6.    On March 31, 2023, the GMCB released its established benchmarks for the 2024 fiscal year budget submissions in a document entitled FY 2024 Hospital Budget Guidance and Reporting Requirements (2024 Guidance).  The 2024 Guidance included a benchmark that limited a hospital's growth of net patient revenue/fixed prospective payment (NPR/FPP) to 8.6%, effectively capping increases to NPR/FPP growth by that amount.  It further included a benchmark for commercial rate increases which provided that the GMCB would "also review and may adjust requested hospital commercial rate increases."

¶ 7.    On July 1, 2023, Northwestern filed its proposed budget.  The budget sought an NPR/FPP increase of 10.3% and a 6% increase in its commercial rates.  Rutland Regional also submitted its proposed budget on July 1, 2023.  Its proposed budget sought a 7.68% increase in NPR/FPP, and a 5.62% increase in its commercial rates.  On August 9, 2023, Northwestern and Rutland Regional presented their respective budgets in a public hearing before the GMCB.

¶ 8.    On August 30, 2023, the GMCB held a public hearing during which it discussed an agenda item labeled "Standard Conditions and Discussion."  Among those in attendance were representatives from several hospitals, including Rutland Regional.  During that meeting, the GMCB's staff attorney announced "standard budget conditions" that related to the GMCB's deliberative process for approving hospital budgets for the 2024 fiscal year.  The GMCB's attorney described the conditions as "a default set of conditions that the [GMCB] would include with each budget approval or modification."  Among the default conditions, which were displayed to those in attendance, were two conditions related to commercial rate increases.  These two budget conditions (hereinafter the Commercial Rate Cap Conditions) provided that increases to commercial rates would not exceed "[xx]% over current approved levels, with no commercial rate increase for any payer at more than [xx]% over current approved levels." (Brackets in original.)

The language of the Commercial Rate Cap Conditions explicitly provided that the approved "commercial rate increase" is "a maximum." The GMCB's attorney explained that under these conditions, "the commercial rate increase overall will be capped at a certain percentage" to be equally applied for each payer, and that the cap "really is a cap; it's a maximum."

¶ 9. After the presentation on the standard budget conditions, the GMCB voted to approve Rutland Regional's proposed budget for the 2024 fiscal year, including its proposed 5.62% commercial rate increase, "subject to the standard budget conditions once those are finalized." A representative of Rutland Regional provided some comment after the budget's approval but did not comment on the Commercial Rate Cap Conditions or any of the other standard budget conditions that would be attached to the budget.

¶ 10. On September 6, 2023, the GMCB held another public hearing to discuss the standard budget conditions and vote on, among other matters, Northwestern's proposed budget. The language of the Commercial Rate Cap Conditions was again presented in its entirety, with the GMCB's attorney explaining that "for each budget approval, the [GMCB] would include in its motion . . . the standard budget conditions or any additions or changes to it." After that presentation, the GMCB voted to approve Northwestern's proposed budget for the 2024 fiscal year, including the request for a 6% commercial rate increase, "subject to the standard budget conditions." Although Northwestern's representatives were present for this meeting and provided public comment on the GMCB's approval of its budget, Northwestern made no comments on any of the standard budget conditions, including the Commercial Rate Cap Conditions.

¶ 11. On September 13 and 15, 2023, the GMCB held public hearings to discuss the standard budget conditions, during which the GMCB displayed the precise language of the Commercial Rate Cap Conditions that would be adopted as part of each hospital budget. During a deliberation at the September 15 hearing on some minor amendments to the Commercial Rate

4

Cap Conditions' language,[1] the GMCB's attorney reiterated that the conditions were "a cap," that "no commercial rate increase for any payer can be above that cap," and that the "cap is a maximum." Having received no comments, the GMCB approved the language of the Commercial Rate Cap Conditions to be included in each hospital budget by default.

¶ 12. On October 1, 2023, the GMCB issued two decisions approving the budgets for Northwestern and Rutland Regional. In its decision approving Northwestern's budget, the GMCB included the Commercial Rate Cap Conditions and capped Northwestern's overall change in charge and commercial rate increases at 6%. The 6% figure was the same figure that Northwestern sought in its proposed budget. The GMCB's decision regarding Rutland Regional's budget also included the Commercial Rate Cap Conditions, capping Rutland Regional's "overall change in charge and commercial rate increases" at 5.6%. As with Northwestern, the 5.6% figure largely reflected the increase that Rutland Regional sought in its proposed budget.[2]

¶ 13. On October 27, 2023, the GMCB held a public hearing that was attended by representatives of Northwestern and Rutland Regional. The GMCB fielded questions from

---

[1] The amendments slightly altered the language of the Commercial Rate Cap Conditions that the GMCB presented at the August 30 public hearing. Originally, the conditions provided: "[HOSPITAL]'s overall commercial rate increase is approved at not more than [xx]% over current approved levels, with no commercial rate increase for any payer at more than [xx]% over current approved levels." (Brackets in original.) The changes to those conditions, which the GMCB adopted, were as follows: [HOSPITAL]'s overall <u>change in charge and</u> commercial rate increases <u>are</u> approved at not more than [xx]% over current approved levels, with no commercial rate increase for any payer at more than [xx]% over current approved levels." (Emphasis added) (Brackets in original.) As the GMCB's attorney explained, these changes were intended only to further clarify that the Commercial Rate Cap Conditions would cap rate increases on charges to commercial payers.

[2] We note that, in its proposed budget, Rutland Regional sought a commercial price change of 5.62%. The GMCB agreed to that precise figure when it approved Rutland Regional's proposed budget at the August 30 hearing. In its October 1 decision on Rutland Regional's budget, however, the GMCB characterized Rutland Regional's proposal as requesting a 5.6% increase; accordingly, it set the Commercial Rate Cap Condition at 5.6%, not the previously requested and approved 5.62%. Neither the record nor the parties provide any clarity as to why the GMCB rounded this figure down by 0.02%. Nevertheless, Rutland Regional did not take issue with this deviation in the underlying proceedings or in its appeal.

Northwestern and Rutland Regional regarding the Commercial Rate Cap Conditions contained in their respective budgets. Northwestern expressed its concern that its proposed 6% figure was based on an average relying on assumptions that could potentially fluctuate. Rutland Regional commented that the 2024 Guidance did not indicate that the GMCB would impose restrictions like the Commercial Rate Cap Conditions, leaving them unable to craft a budget with those conditions in mind. It further stated that "if there would be written testimony or questions, we would have provided additional information there as well. But this is a new restriction, a requirement that we didn't have the opportunity to consider." These appeals followed.

¶ 14. Northwestern and Rutland Regional raise two claims on appeal. First, they argue that the GMCB deprived them of due process by failing to provide adequate notice that it would impose the Commercial Rate Cap Conditions on their proposed budgets. Second, they claim that the GMCB had no authority to impose the Commercial Rate Cap Conditions because the conditions lacked a factual basis and contradicted the GMCB's initial approval of their proposed budgets.

¶ 15. We decline to reach the merits of these claims because, as the GMCB correctly notes, they were not preserved for our review. We have repeatedly stressed that "this Court will not address arguments not properly preserved for appeal." In re Entergy Nuclear Vt. Yankee, LLC, 2007 VT 103, ¶ 9, 182 Vt. 230, 939 A.2d 504. "The preservation requirement prohibits parties from raising before a court issues they did not present . . . to the administrative agency which served as the original forum for the dispute." In re Grundstein, 2020 VT 102, ¶ 16, 213 Vt. 528, 251 A.3d 30 (quotation omitted). "[T]o properly preserve an issue, a party must present the issue to the administrative agency with specificity and clarity in a manner which gives the [agency] a fair opportunity to rule on it." Pratt v. Paillito, 2017 VT. 22, ¶ 16, 204 Vt. 313, 167 A.3d 320 (quotation omitted) (second alteration in original). The preservation requirement applies with

6

equal force to constitutional claims. <u>Vt. Nat. Tel. Co. v. Dep't of Taxes</u>, 2020 VT 83, ¶ 64, 213 Vt. 421, 250 A.3d 567.

¶ 16.    The record reveals that Northwestern and Rutland Regional failed to satisfy their obligation to preserve their claims. As is apparent by the timeline delineated above, Northwestern and Rutland Regional had several opportunities to raise the claims they now argue on appeal with the GMCB before the GMBC issued its final budget decisions. The first opportunity came at the August 30 hearing. During that hearing, the GMCB (1) discussed each of the standard budget conditions, (2) explained how the Commercial Rate Cap Conditions would operate as a cap for every commercial payer, and (3) stated that the GMCB would include the "default" Commercial Rate Cap Conditions "with each budget approval or modification" for the 2024 fiscal year. There is no dispute that Rutland Regional was present at the August 30 hearing. In fact, later at that hearing, Rutland Regional offered public comments immediately after the GMCB moved to approve Rutland Regional's budget "subject to the standard budget conditions once those are finalized." Despite the opportunity, Rutland Regional failed to raise any issues with the GMCB about its decision to cap Rutland Regional's commercial rate increases.

¶ 17.    The same is true of Northwestern. It attended the September 6 hearing where the GMCB again discussed the Commercial Rate Cap Conditions. The GMCB pointedly explained that it would include these conditions "for each budget approval." After that discussion, the GMCB moved to approve Northwestern's proposed budget "subject to the standard budget conditions." Although present, and despite providing public comment, Northwestern did not voice any concerns related to the Commercial Rate Cap Conditions.

¶ 18.    Northwestern and Rutland Regional had other opportunities to raise their claims with the GMCB before it issued its final decisions. The GMCB discussed the standard budget conditions and, specifically, the Commercial Rate Cap Conditions during public hearings on September 13 and September 15. However, neither Northwestern nor Rutland Regional attended

7

these public sessions. They also failed to submit any written comments on the Commercial Rate Cap Conditions or the inclusion of those conditions in their budgets. Throughout the entire budgetary review process, and despite the GMCB's explicit statements that it would impose the conditions, Northwestern and Rutland Regional failed to take any steps to raise their objections with the GMCB. See In re Programmatic Changes to Standard-Offer Program & Investigation into Establishment of Standard-Offer Prices, 2017 VT 77, ¶ 11 205 Vt. 358, 175 A.3d 509 (holding that applicant failed to preserve claims regarding agency's use of procedural statute to award contracts because "at no time during this process—from the initial request for proposals to the award of standard-offer-contracts—did [appellant] ask the [agency]" to address its arguments).

¶ 19. The record therefore does not support the argument of Northwestern and Rutland Regional that they learned of the Commercial Rate Cap Conditions only after the October 1 decisions. Although they did not know the precise figure that would be included in the Commercial Rate Cap Conditions until the GMCB issued the written decisions, they knew or should have known that the caps would be imposed from what was said at the public hearings they attended. Therefore, they had ample opportunity to make their procedural and factual claims. The GMCB unambiguously stated during the budget approval hearings that it was approving Northwestern's and Rutland Regional's respective budgets subject to the Commercial Rate Cap Conditions. Despite being aware that the GMCB would cap commercial rate increases, Northwestern and Rutland Regional did not offer any comment or ask any questions about the amount of the rate cap. Nor did they argue to the GMCB that their budgets should be exempted from the default Commercial Rate Cap Conditions based on a lack of sufficient notice or a lack of agency authority to impose the conditions. See Entergy Nuclear, 2007 VT 103, ¶ 17 (rejecting appellant's preservation argument that procedural violation was only apparent from written order, as alleged error was predictable and could have been raised during administrative proceedings).

¶ 20. We are also unconvinced that Northwestern and Rutland Regional properly preserved their arguments at the October 27 hearing. That hearing occurred well after the statutory deadline for the GMCB to issue written decisions for its budget approvals. See 18 V.S.A. § 9456(d)(1). Thus, to the extent that their statements at that hearing can be construed as raising the arguments they bring in these appeals, Northwestern and Rutland Regional effectively objected for the first time in a post-final judgment setting. "[L]itigants may preserve issues in post-judgment motions" in appropriate circumstances, but "they may not do so when those issues should have been raised in earlier proceedings" before the agency. Entergy Nuclear, 2007 VT 103, ¶ 15. The issues presented by Northwestern and Rutland Regional fall into that latter category. From August 30, 2023 to September 15, 2023, there were several chances for them to raise their claims with the GMCB. As such, they had both "the opportunity and the means to raise [their] argument[s]" throughout that period. Programmatic Changes, 2017 VT 77, ¶ 12. Instead, Northwestern and Rutland Regional attempted to do so long after the September 15 deadline for the GMCB's budget approval and the October 1 deadline for a final written decision. See id. (holding that party failed to preserve claim when raised in its motion for reconsideration because it had opportunity and means to assert claims in prejudgment proceedings before agency). At that point, the GMCB lacked the opportunity to adequately consider and address their arguments. See In re Shoreham Tel. Co., 2006 VT 124, ¶ 33, 181 Vt. 57, 915 A.2d 197 (concluding that party failed to preserve argument that agency deprived it of value for property without just compensation because party did not "afford the [agency] a fair opportunity to address the issue").

¶ 21. Moreover, neither Northwestern nor Rutland Regional raised their claims at the October 27 hearing with the "specificity and clarity" required for preservation. See Grundstein, 2020 VT 102, ¶ 16. Northwestern took issue only with the precise figure that the GMCB included as a cap, arguing that its request for a 6% increase was based on assumptions that could change depending on the payer. It never claimed, as it does now, it lacked notice that the GMCB would

9

impose the Commercial Rate Cap Conditions or that the conditions lacked a factual basis. Likewise, Rutland Regional did not argue that it lacked sufficient notice that the GMCB would impose Commercial Rate Cap Conditions in Rutland Regional's budget or that imposing the conditions was unreasonable. Although it did question whether "this budget item" was consistent with the 2024 Guidelines and commented that it "didn't have the opportunity to consider" the Commercial Rate Cap Conditions when it created its proposed budget, these general statements did not specifically and clearly raise its claim of insufficient notice. See Miller-Jenkins v. Miller-Jenkins, 2010 VT 98, ¶ 30, 189 Vt. 518, 12 A.3d 768 (mem.) (observing that this Court has "previously held that the mere mention of fair warning . . . was not enough to preserve a due process claim on appeal" and concluding that plaintiff's averment of "serious constitutional implications" insufficient to preserve due process claim); cf. State v. Hinchliffe, 2009 VT 111, ¶ 32, 186 Vt. 487, 987 A.2d 988 ("Merely mentioning a 'constitutional problem' during an unrelated part of the trial proceedings was not sufficient to preserve the objection now asserted on appeal.").

¶ 22.    Finally, we reject the argument posed by Northwestern and Rutland Regional that we should decline to apply the preservation requirement under the instant circumstances. The cases they cite in support of their contention are readily distinguishable. In Grundstein, this Court examined whether it should apply the preservation rule to constitutional claims that were not raised before the Board of Bar Examiners in the underlying bar admission proceedings. We declined to do so because the Board of Bar Examiners is not an administrative agency but rather an "arm of this Court," and "this Court is the original forum for disputes" for admission to the bar. Grundstein, 2020 VT 102, ¶ 17 (quotation omitted). Accordingly, we concluded that the preservation requirement was "a poor fit in this context." Id. Here, however, the GMCB is an administrative agency, and this Court does not have original jurisdiction over the review and approval of hospital

budgets in Vermont. There is no basis to conclude that the preservation requirement is ill-suited given the nature of these appeals.

¶ 23. Vermont National Telephone Co. v. Department of Taxes, where this Court exercised its discretion and addressed an unpreserved constitutional claim, is also inapposite. 2020 VT 83, ¶ 66. We reached the merits of the claim in that case because although the plaintiff did not assert it with the Commissioner of Taxes, the claim was nevertheless raised before, and addressed by, the trial court. Id. Under those circumstances, and with the parties having fully briefed the constitutional claim, we determined that "[t]he goals of our preservation rule have therefore been met." Id. That is not the case in this instance. We do not have the benefit of a prior examination of Northwestern's and Rutland Regional's claims by the original or any intermediate body. Instead, Northwestern and Rutland Regional ask this Court to act as the initial forum to address their arguments. Because we cannot say that the "goals of our preservation rules are satisfied" under the present circumstances, we decline to abandon our preservation requirement. See In re LaBerge NOV, 2016 VT 99, ¶ 16, 203 Vt. 98, 152 A.3d 1165 (addressing unpreserved constitutional claims where Environmental Division addressed merits of claims, thus satisfying purpose of preservation requirement to allow original forum "opportunity to rule on an issue prior to our review" (quotation omitted)).

Affirmed.

FOR THE COURT:

_____
Associate Justice

11