NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 49

No. 24-AP-325

In re Rutland Regional Medical Center Fiscal Year 2025

Supreme Court

On Appeal from
Green Mountain Care Board

May Term, 2025

Owen Foster, Chair

John A. Serafino of Ryan Smith & Carbine, LTD., and Mitchell E. Baroody, VP, Chief Legal Officer and Elizabeth A. Glynn, Deputy General Counsel, Rutland, for Appellant The Rutland Hospital, Inc. d/b/a Rutland Regional Medical Center.

Charity R. Clark, Attorney General, and Ryan P. Kane, Deputy Solicitor General, Montpelier, for Appellee Green Mountain Care Board.

Gary L. Franklin of Primer Piper Eggleston & Cramer PC, Burlington, for Amicus Curiae Vermont Association of Hospitals and Health Systems.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **REIBER, C.J.** This is an appeal by The Rutland Hospital, Inc. d/b/a Rutland Regional Medical Center (RRMC) from an order of the Green Mountain Care Board approving RRMC's fiscal year 2025 (FY25) budget subject to certain conditions. RRMC argues that the Board acted arbitrarily in approving a revenue increase that was lower than requested by RRMC. RRMC further contends that the Board's order must be reversed because it included a provision that was adopted in violation of the Vermont Administrative Procedure Act. We conclude that footnote 27 of the Board's order must be stricken but otherwise affirm.

¶ 2. The Green Mountain Care Board regulates Vermont's healthcare industry. One of its primary purposes is to promote the general good of the State by "reducing the per-capita rate

of growth in expenditures for health services in Vermont across all payers while ensuring that access to care and quality of care are not compromised." 18 V.S.A. § 9372(2). To this end, the Board is required to annually review and establish hospital budgets. Id. § 9375(b)(7). The timeframe and process for budget reviews, as well as the factors the Board is required to consider, are set forth in 18 V.S.A. § 9456(b) and in the Board's rules. See generally In re Nw. Med. Ctr. Fiscal Year 2024, 2024 VT 39, ¶ 2, __ Vt. __, 325 A.3d 25 (describing hospital budget-review process).

¶ 3. In March 2024, the Board issued its "FY 2025 Hospital Budget Guidance & Reporting Requirements," which contained benchmarks for hospitals to use in developing their FY25 budget proposals. The FY25 guidance explained that there were two main ways that healthcare spending affected affordability:

> (1) more aggregate health care spending (i.e. price x utilization) translates into higher costs of health insurance, which means higher premiums and out of pocket payments for both the insured and uninsured, and (2) the price of health care services affects not only premiums, but also copays and direct expenses borne by patients.

The guidance included two benchmarks targeted at improving affordability.

¶ 4. The first benchmark addressed net patient revenue (NPR), which is "the net revenue a hospital receives for the patient services it provides." NPR includes fee-for-service payments, which are payments for individual services, and fixed prospective payments, which are advance payments for specific services rendered to a particular group of patients. The FY25 guidance benchmark limited NPR growth to 3.5% over FY24 approved budgets, which the Board stated was "in line with the total cost of care (TCOC) growth target in the Vermont All Payer Model." Hospitals seeking to exceed this benchmark were required to provide evidence "that the excessive growth reflects an improvement in access or quality of care (e.g., increased access as justified by lower projected wait times and a means to achieve them, population growth as justified by demographic trends and projected increases in new patient volumes, etc.)." The second benchmark

2

limited commercial rate growth, which is the total increase in negotiated rate that a hospital receives from commercial health insurers, to 3.4% over FY24 approved budgets.

¶ 5. In its FY25 budget proposal, RRMC requested a 6.1% increase in NPR over its FY24 approved budget and a 2.8% commercial rate increase over its FY24 approved budget. RRMC argued that a 6.1% NPR increase was justified because it was experiencing greater patient volume from Rutland County and patients from other areas of the state attracted to its services, while also making efforts to reduce wait times. RRMC's senior leadership presented its proposed budget to the Board at a public hearing in August 2024 and submitted written responses to questions posed by Board staff.

¶ 6. On October 1, 2024, the Board issued its decision regarding RRMC's FY25 budget. In the decision, the Board made findings about numerous factors including RRMC's budgeted assumptions about Medicare and Medicaid rates; patient utilization; operating revenues and expenses; prior budgets; ratios of administrative and general salaries to clinical salaries and clinical to nonclinical employees; Medicare payment-to-cost ratio; wait times; investment in workforce development; and commercial standardized prices compared to national averages.[1] The Board ultimately concluded that a 5.0% increase in NPR growth, which was 1.5% over the benchmark amount, "strikes the appropriate balance of ensuring that population health care needs are met while restricting the overall price of care." It therefore approved a 5.0% NPR increase. The Board further concluded that RRMC's commercial negotiated rate request of 2.8% was reasonable because it was below the benchmark amount and "adequately account[ed] for higher commercial negotiated rates in FY23 and FY24 for a hospital that in FY22 had average standardized prices." The Board accordingly approved RRMC's commercial negotiated rate increase at no more than 2.8% over current approved levels. In a footnote, however, the Board stated that the 2.8% increase was reduced by 1.6% to 1.2% over current approved levels due to RRMC exceeding its FY23

---

[1] RRMC does not challenge any of these findings on appeal.

budget, "as explained in this Board's forthcoming Budget Enforcement Order for RRMC." RRMC appealed the Board's October 1 order to this Court.

¶ 7. RRMC first argues that the Board's reduction of its requested FY25 NPR growth rate was arbitrary and capricious because the Board failed to adequately explain how it reached the figure of 5.0%. Our review of the Board's exercise of its discretionary duty to set hospital budgets is deferential. "This Court will not interfere with the decision of an administrative board made in the performance of a discretionary duty in the absence of a showing of abuse of discretion resulting in prejudice to one of the parties." In re MVP Health Ins. Co., 2016 VT 111, ¶ 19, 203 Vt. 274, 155 A.3d 1207 (quotation omitted). "Therefore, we will not delve into the reasons for the Board's actions absent evidence of an abuse in the exercise of its discretion." Id. (quotation omitted). The Board must adequately explain the reasons for its decision with reference to applicable standards, however. See id. ¶ 20 (explaining that administrative "decisions arrived at without reference to any standards or principles are arbitrary and capricious; such ad-hoc decision-making denies an applicant due process of law" (quotation and alterations omitted)).

¶ 8. We conclude that the Board adequately explained the reasoning for its decision to approve a 5.0% increase in NPR growth for RRMC's FY25 budget. The Board acknowledged RRMC's argument that its requested 6.1% increase was attributable to increased utilization and reduced wait times and was necessary to maintain its budgeted 2.5% operating margin. However, the Board found that 5.0% NPR growth, which was still 1.5% higher than the benchmark established in the FY25 guidance, "will promote efficient and economic operation of the hospital while supporting the health care reform principles described" earlier in its decision. The Board explained that RRMC was in stronger financial health than other Vermont hospitals, as indicated by lower-than-average operating expense growth, strong days cash on hand and patient accounts receivable, and an above-breakeven ratio of assets to liabilities. The Board found, however, that RRMC's Medicare payment-to-cost ratio—that is, the difference between the revenues paid by

4

Medicare for care and Medicare's estimate of the cost to the hospital for providing that care—was twenty percentage points lower than peer hospitals. The Board found this indicated that RRMC had capacity to reduce its operating expenses. This conclusion was bolstered by the fact that RRMC's operating expenses had been over budget since 2021. The Board found that a 5.0% increase would encourage RRMC "to shift care that [did] not need to be at the hospital to lower-cost clinically appropriate settings." It concluded that "[s]hifting services where appropriate to other area providers strikes the appropriate balance of ensuring that population health care needs are met while restricting the overall price of care."

¶ 9. As the Board explained, it is required to strike a balance between maintaining access to quality health care and controlling costs for consumers and insurers. This balancing necessarily involves discretion and is not necessarily subject to precise formulation. Cf. In re Cont'l Tel. Co. of Vt., Inc., 150 Vt. 76, 78, 549 A.2d 639, 640 (1988) (explaining rate-increase decision involves "assumptions, estimates and projections of the future," and "[i]f it were subject to precise measurement, applying a mere mathematical formula could do the task of the Board"). It is not the role of this Court to reweigh the factors considered by the Board. Cf. In re Citizens Utils. Co., 171 Vt. 447, 462, 769 A.2d 19, 32 (2000) (explaining that Court's role in reviewing utility rate-setting decisions "is not to reweigh the Board's balancing of consumer and investor interests in setting rates, but rather to assure ourselves that the Board has given reasoned consideration to both of those interests, and . . . the end result of the rate order is within a 'zone of reasonableness' " (quoting In re Permian Basin Area Rate Cases, 390 U.S. 747, 791-92 (1968))). The Board's decision makes clear that it viewed 5.0% as a reasonable fact-based compromise between the higher rate requested by RRMC and the statewide benchmark established by the Board for FY25. The Board concluded that RRMC had the ability to reduce its expenses by shifting care to less expensive clinical settings. This conclusion is supported by its findings, which are not challenged by RRMC.

5

¶ 10.    This case is therefore unlike MVP Health, where we reversed the Board's decision rejecting an insurer's requested rate increase because the Board failed to make specific findings on the statutory criteria required for approval of health-insurance rates.  2016 VT 111, ¶ 22.  Here, the Board made findings regarding the factors set forth in 18 V.S.A. § 9456(d) and explained its reasoning for approving a rate lower than requested by RRMC.  We therefore see no abuse of discretion.

¶ 11.    RRMC argues that the Board's ruling will force RRMC to reduce access to care by eliminating or reducing certain services that it currently offers or had planned to offer.[2]  RRMC argues that this is contrary to the goals of the Board's enabling statute, which include that "[t]he State of Vermont must ensure universal access to and coverage for high-quality, medically necessary health services for all Vermonters," 18 V.S.A. § 9371(1), and "[e]very Vermonter should be able to choose his or her health care provider," id. § 9371(5).  RRMC further notes that the Board has a duty to "work in collaboration with providers to develop payment models that preserve access to care and quality in each community."  Id. § 9375(b)(1)(A)(i).

¶ 12.    We disagree that the Board acted outside its authority or contrary to its enabling legislation by approving an NPR increase that was lower than requested by RRMC but still above the benchmark amount.  RRMC's argument ignores the other purposes of the Board's enabling legislation, which include that "[o]verall health care costs must be contained, and growth in health care spending in Vermont must balance the health care needs of the population with the ability to pay for such care," id. § 9371(2), and "Vermont's health care system must include mechanisms for containing all system costs and eliminating unnecessary expenditures, including by reducing administrative costs and by reducing costs that do not contribute to efficient, high-quality health

---

[2]  Some of the reductions in access RRMC described to the Board appear to be planned increases in services that RRMC would choose to forego if not granted its requested NPR increase. It is not clear from the record before us that eliminating these planned increases will translate to a reduction in access, as opposed to simply maintaining current levels of access to services.

services or improve health outcomes," id. § 9371(10). The Board has a difficult task in balancing these competing goals and acted within its discretion in permitting RRMC to continue to grow NPR at a slightly lower rate than requested.

¶ 13. We turn to RRMC's other main argument, which is that the Board's decision includes a condition that was adopted in violation of the Vermont Administrative Procedure Act (VAPA). RRMC argues that the Board's FY23 budget-enforcement proceeding against RRMC, which occurred during the same timeframe as the FY25 budget-review proceeding, was a contested case within the meaning of the VAPA. RRMC argues that the Board violated the VAPA by imposing a 1.6% budget adjustment in the budget-enforcement proceeding and then applying it to RRMC's FY25 budget without following contested-case procedures.

¶ 14. In the order on appeal, the Board approved RRMC's requested commercial negotiated rate increase of 2.8%. In footnote 27 of its decision, however, the Board stated that

> RRMC's 2.8% overall change in charge and commercial negotiated rate increase are further reduced by 1.6% due to Board enforcement of the hospital's FY23 budget overage. See Hospital Budget Review, GMCB Staff Presentation (Sept. 13, 2024), 1-9, 14-15. Accordingly, RRMC's overall FY25 change in charge and commercial negotiated rate increase are approved at no more than 1.2% over current approved levels, with no commercial negotiated rate for any payer at more than 1.2% over current approved levels, as explained in this Board's forthcoming Budget Enforcement Order for RRMC.

¶ 15. As promised, on October 10, 2024, the Board issued a separate budget-enforcement order in which it reduced RRMC's FY25 commercial negotiated rate increase from 2.8% to 1.2% to correct for the hospital's FY23 budget overage.[3] RRMC appealed the budget-enforcement order

---

[3] RRMC attempted to appeal the budget-enforcement order directly to this Court. We dismissed the appeal because, at that time, RRMC was required by statute to appeal to the superior court. 18 V.S.A. § 9456(h)(2)(B)(ii) (2024) ("Hospitals may appeal any decision in this subsection to Superior Court. Appeal shall be on the record as developed by the Board in the administrative proceeding and the standard of review shall be as provided in 8 V.S.A. § 16."). The Legislature has since amended § 9456(h)(2)(B)(ii) to remove the provision directing hospitals to appeal to the superior court. See 2025, No. 62, § 7.

to the superior court. On June 13, 2025, the superior court issued a decision reversing and remanding the budget-enforcement order on the ground that it was issued on unlawful authority because the Board failed to follow the procedure required by the VAPA. The Rutland Hospital, Inc. v. Green Mountain Care Bd., No. 24-CV-04608 (Vt. Super. Ct. June 13, 2025). The Board did not appeal this decision, which is now final.[4]

¶ 16.    Given this procedural posture, we need not address the merits of RRMC's arguments regarding the procedure followed by the Board in the budget-enforcement proceeding. Because the language of footnote 27 reducing RRMC's approved commercial negotiated rate increase to 1.2% is based solely on the budget-enforcement order, which has been reversed without timely appeal, we strike that footnote. As noted above, the Board otherwise approved RRMC's request for a 2.8% increase. Accordingly, removal of the footnote means that the higher rate is the approved rate. The Board's October 1, 2024 decision is otherwise affirmed.

Footnote 27 of the Board's October 1, 2024 decision is stricken. The decision is otherwise affirmed.

FOR THE COURT:

_____

Chief Justice

---

[4] In its appellate brief, the Board argued that RRMC was precluded from challenging the budget-enforcement order in this appeal because of the pending proceeding in superior court. It further argued that reducing commercial rates based on the budget-enforcement order was factually and legally supported and that the VAPA's contested-case procedures did not apply to the budget-enforcement proceeding. Because the superior court has now issued a final decision against the Board on these issues, we see no reason why footnote 27 should not be stricken.